GARY M. RESTAINO
United States Attorney
District of Arizona

GAYLE L. HELART
Assistant U.S. Attorney
California Bar No. 151861
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: gayle.helart@usdoj.gov
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Roberto Lozano Partida, III,<br><br>Defendant. | No. CR-23-00092-PHX-DLR<br><br>**GOVERNMENT'S RESPONSE TO MOTION TO RECONSIDER CONDITIONS OF RELEASE** |

      This Court should detain Partida pending trial.  On December 30-31, 2022, Partida, a California resident, used a fraudulent driver's license in the name of J.C.K. (an actual person who is a resident of Surprise, Arizona) but with Partida's picture, to purchase 10 handguns from four different federally licensed firearms dealers in Yuma, Arizona.  Partida was contacted as he exited one of the stores holding three of the ten handguns and the J.C.K. false driver's license.  In Partida's motel room, he possessed the additional seven guns and three more unique driver's licenses with his own, Partida's, picture but with other males' names, similar to the J.C.K. driver's license.  In Partida's rental vehicle, he possessed his own driver's license showing that he was a resident of California.  As a California resident, he could not legally take possession of the guns from dealers in Arizona, nor can anyone for any reason ever lawfully purchase firearms while using a false identification.

The government requests detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (any felony that is not otherwise a crime of violence that involves…the possession …of a firearm and § 3142(f)(2)(A) (a serious risk that such person will flee). Partida has no ties to Arizona, purchased ten handguns using another person's identification, and possessed additional identification documents with the same picture and different men's names. [Exhibit 3].

As of January 27, 2023, Partida was also charged by the Yuma County Prosecutor's Office with eight criminal counts that include four charges of Taking the Identity of Another Person (a Class 4 felony) and four charges of Forgery (a Class 4 felony). [Exhibit 2]. There is a current corresponding arrest warrant in place.

## Background

### Procedural History

Partida was charged by complaint within a day of this investigation. (See Docket 1, 23-3001 MJ filed 1/1/23). On January 24, 2023, a federal grand jury returned similar charges against Partida charging him with five violations of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (Furnishing Misrepresented Identification in Connection with the Acquisition of a Firearm) and five violations of 18 U.S.C. §§ 1028A(a)(1), 1028A(b) and 1028A(c)(3) (Aggravated Identity Theft).

On January 10, 2023, a full detention hearing was conducted by the Honorable Magistrate Judge Metcalf in which both parties proceeded by proffer. [See Exhibit 1, Transcript of January 10, 2023 detention hearing]. The defense articulated three points: (1) there was a pending felony matter with the Yuma Justice Court; (2) there was possible illegal drug use; and (3) there was a lack of a suitable residence. As to the first, the defense argued that the prosecutor at Yuma County stated they were declining prosecution in light of the federal case and did not expect for there to be a local prosecution. [Exhibit 1, p. 5]. As to the second matter, the defense acknowledged that the ex-wife was caught off guard when contacted by the pretrial services officer, but that with a follow up contact by defense, the ex-wife and her new boyfriend would allow Partida to stay with them if necessary.

[Exhibit 1, p. 5].  The defense further explained the past domestic violence arrests ended with dismissals [Exhibit 1, pp. 5-6].  Defense counsel also stated that Partida's lawyer in California reached Partida's sisters and were willing to do anything they could to assist him.  With respect to the eviction information, *i.e.* that the pretrial services report reflected that the Central District of California pretrial services personnel had visited the property on Friday January 6, 2023 (four days before the detention hearing) and observed eviction notices on the door, that he was part of a social safety program that would make his payments and that he could not be evicted. [Exhibit 1, p. 7].  With respect to any suspected use, defense counsel represented that Partida would take any drug tests that the Court ordered.  [Exhibit 1, p. 8].

This Court questioned the pretrial services officer about the Yuma County case; specifically, that if the case were not filed locally, would that change the pretrial office's decision and the answer was that it would not given the concerns on page 5 of the pretrial services report, which included the information about the notices of eviction and Partida's statement of illegal drug use.  This Court agreed stating its concerns about Partida's unstable housing, his criminal history, and the recommendation by the pretrial services officer.  This Court also invited any new information to be presented. [Exhibit 1, p. 9].

This Court ultimately found that:

By a preponderance of the evidence, the defendant is a flight risk;

There is a serious risk the defendant will flee and that no condition or combination of conditions will reasonably assure the appearance of the defendant as required (ECF 6).

Partida now moves this Court to reconsider its January 10, 2023 Order denying release based on his submission of four people who are willing to be third party custodians.  Partida still presents a serious flight risk, and Partida still possessed a firearm in conjunction with another felony.  This Court should deny Partida's motion.

**Factual History**

The government has attached the transcript of the January 10, 2023 detention hearing where this Court considered the facts, pretrial services report information, and

attorney arguments. [Exhibit 1]. If another hearing were scheduled, whether the hearing proceeded with a witness or by proffer, the government expects the following facts to be elicited.

An employee from a federally licensed firearms dealer in Yuma called the Bureau of Alcohol, Tobacco, Firearms, and Explosives, on December 31, 2022. The employee stated that the Partida, then representing himself as J.C.K. with a DOB of 1990, possessed a driver's license that did not seem quite right. The ATF case agent took the information and determined that J.C.K. was an actual person, and a different individual than had sought to purchase firearms from the dealer. Further investigation on December 31, 2022, showed that Partida, using the same fraudulent J.C.K. driver's license had purchased a total of nine firearms from three separate federally licensed firearms dealers in Yuma.[1]

The employee called Partida, known as J.C.K., back to the store where Partida then took possession of his gun purchases. Outside of the store, law enforcement contacted Partida and seized the three guns and the fake J.C.K. driver's license in his possession. Law enforcement was able to confirm Partida's identity soon thereafter using his fingerprints. Law enforcement also obtained two search warrants for the motel room and u-Haul rental vehicle that Partida was associated with by earlier surveillance that day. In Partida's motel room, they found an additional seven guns (for now a total of 10), and several identifications in three additional unique male names (initials R.T.R., B.D.R, and A.H.P., with his own (Partida's) picture. Notably, the picture on all the fraudulent driver's licenses visually looked like the very same picture of Partida, and was the same picture as was on the J.C.K. driver's license. The fraudulent driver's license in the name of R.T.R. was a Nevada driver's license. The fraudulent driver's license in the name of B.D.R. was a Texas driver's license. The fraudulent driver's license in the name of A.H.P. was a California driver's license. **[Exhibit 3].**

---

[1] These transactions were reflected in the Complaint filed 1/1/2023.

The Indictment added the tenth gun located in the motel room that Partida purchased from a fourth federally licensed dealer in Yuma.

Each of these guns ranged in price from approximately $400 - $600. The transactions were in cash.

Additionally, the government could produce by proffer or through an agent's testimony that J.C.K. was interviewed. He knew his identification had been stolen as of approximately May 2022 because he received a letter by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, that a gun he purchased had been located as part of a crime. He stated he never bought a gun then, nor did he purchase any guns in Yuma, Arizona on December 30-31, 2022. Further, he did not give anyone permission to use his identification. He did not know Partida.

### **Discussion**

This Court reviews detention orders *de novo*. *United States v. Koening*, 912 F.2d 1190, 1191-93 (9th Cir. 1990). *De novo* review in this context does not mean the district court is required to hold a new evidentiary hearing to evaluate credibility disputes or even to grant further argument. *See United States v. Raddatz,* 447 U.S. 667, 676 (1980). Rather, the Court has discretion as to whether to hear additional argument or evidence, and "[c]learly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." *Koening*, 912 F.2d at 1193. Thus, the district court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.*

This is not a presumption of detention case under 18 U.S.C. § 3142(e). However, the government can ask for a hearing or consideration under § 3142(f)(1)(E) (any felony that is not otherwise a crime of violence that involves…the possession …of a firearm), and § 3142(f)(2)(A) (a serious risk that such person will flee). This Court will consider four factors in determining whether to detain an individual:

1. the nature and circumstances of the offense charged, including whether the offense involves a controlled substance, firearm, explosive, or destructive device;
2. the weight of the evidence against the person;
3. the history and characteristics of the person, including the person's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, and history relating to drug or alcohol abuse; and
4. the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *See also Hir*, 517 F.3d at 1086; *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Motamedi,* 767 F.2d 1403, 1407 (9th Cir. 1985).

The Ninth Circuit and district courts in the Ninth Circuit have considered and detained individuals for serious risk of flight with at least some of the similar factors as Partida presents here. For example, in **United States v. Santos-Flores**, 794 F.3d 1088, 1092 (9th Cir. 2015), the Ninth Circuit upheld the district court's order that defendant (an illegal alien) posed a flight risk supported by his multiple unlawful entries into the United States, a prior failure to appear, his use and possession of fraudulent identity documents, and the severity of the potential punishment and the weight of the evidence against him. . . In **United States v. Greenoge**, 2021 WL 3856519, *2 (S.D. Cal. August 30, 2021), the district court detained the defendant, charged with being a felon in possession of a firearm, solely on risk of flight based, in part, on criminal history that involved making fictitious checks and identity theft offenses. Further, in *Greenoge*, the district court also rejected the defendant's argument that he could not adequately prepare with his counsel because of the distance between San Diego, CA (where defendant's attorney resided) and defendant's housing facility in San Luis, AZ. *Id.* "Traveling additional hours to meet with an in-custody client may be inconvenient to defendant counsel but such scenario does not rise to the level of infringing on a defendant's Sixth Amendment right." *Id.* In **United States v.**

*Miranda,* 2021 WL 493404 (N.D. Cal. February 10, 2021), the defendant, who was charged with drug trafficking, was detained solely on the factor that he presented a serious risk of flight based, in part, that the defendant lived under an assumed identity and was using a fraudulent driver's license and social security card. "The use and possession of fraudulent identity documents supports detention based on risk of flight." *Id.* at *3. In **United States v. Moreno**, 2017 WL 4271902 *3 (S.D. Cal. September 25, 2017) (unpublished), the defendant, charged with drug offenses, was detained as a serious risk of flight with the district court noting the false identification documents, ledgers indicating criminal activity and photos displaying guns, drugs, and money. And, in **United States v. Boykins,** 2012 WL 3638659 *2-3 (N.D.Cal. August 22, 2012), the defendant, charged with being a felon in possession, was detained for a serious risk of flight with the court noting several troubling aspects of his past and criminal history that included the defendant having given false identification to a police officer in the past, and rejecting the defense argument about a halfway house as "there would be nothing preventing him from walking away."

### Analysis

Here, the preponderance of the evidence demonstrates that Partida is a flight risk, and this remains true even if he lives with a family member or friend. Nothing prevents Partida from walking away from a friend or family member, and he has shown he is mobile by his being in Arizona over New Year's Eve weekend buying ten guns, and that he is willing and able to obtain or create false identification documents that fooled commercial business owners. Given the facts in Partida's case, including the identical picture on several different states' driver's licenses [Exhibit 3] he remains a serious risk of flight with the ability to take on a new identity in another state.

With regard to each factor:

### 1. The Nature and Circumstances of the Offenses Charged are Serious

The Indictment charges Partida with five violations of using a false identification to purchase firearms, a total of ten, from four federally licensed firearms dealers, on December 30-31, 2022. Partida used the identification of a real person, J.C.K., without

J.C.K.'s permission or knowledge. Partida correctly states that he is not a felon, however, that is not the end of any concerns generated by his conduct of purchasing ten handguns in cash, which do not trace to him, presumably to sell to other unknown individuals for a profit since, for example, these guns are not special collector guns. Putting it another way, it is difficult to infer any innocent reason why Partida would purchase such a volume of handguns except to turn around and sell them for a profit to people who are unable to buy them for themselves, and without the purchases being traced to Partida.

### 2. *The Weight of the Evidence is Great*

In the Ninth Circuit, the weight of the evidence is generally considered the "least important" of the four factors, *United States v. Motamedi,* 767 F.2d 1403, 1408 (9th Cir. 1985), but "[i]t is a factor nonetheless," *United States v. Tooze*, 236 F.R.D. 442, 447 (D. Ariz. 2006). Here law enforcement agents located Partida with the false identification and the last three guns on his person in the parking lot. An additional seven guns and Partida's real identification were found in the rental vehicle Partida drove and motel room he rented. Partida paid cash for all the transactions.

### 3. *Partida's History and Characteristics Support Detention*

Partida may not have any felony convictions, however, the pretrial services report documents his two police contacts for domestic violence battery and a conviction for reckless driving. Even acknowledging these contacts were from a decade ago, the current charges are a clear escalation of Partida's criminal conduct. Partida is apparently gainfully employed,[2] yet he used a false identification to purchase ten handguns. He faces federal charges, and also faces a Yuma County arrest warrant for eight counts relating to the identity theft and forgery arising from this same investigation. [Exhibit 2].

---

[2] Partida represented to the pretrial services officer that he earned $3,000 monthly.

Partida is a resident of California, confirmed by the information obtained by law enforcement, his own actual driver's license, and the four letters he presents of family and friends who would each be willing to be a third party custodian.

All of these facts, with the suspected drug use given his statements to the pretrial services about drug use, weigh in favor of detention now.

### 4. Partida Poses a Danger to the Community

"[T]he language [in the Bail Reform Act] referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community," and it has "a broader construction than merely danger of harm involving physical violence." S. Rep. 98-225, at 12, 1984 U.S.C.C.A.N. 3182, 3195 (Aug. 4, 1983). Partida purchased ten handguns, at a price of several hundred dollars each, in two days for an unknown reason using the name and identifiers of J.C.K.

There is a current arrest warrant pending for Partida from Yuma County.

This Court should affirm its prior Order of Detention pending trial.

Respectfully submitted this 8th day of February, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Gayle L. Helart*
GAYLE L. HELART
Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that on same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants: Robert Bruce Stirling, *Attorney for Defendant*

*s/E. Lane*
U.S. Attorney's Office