# Exhibit 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

|  |  |  |
|---|---|---|
| **United States of America,** | ) | |
| | ) | No. 23-cr-00092-DLR-1 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Yuma, Arizona |
| **Roberto Lozano Partida, III,** | ) | January 10, 2023 |
| | ) | 11:27 a.m. |
| Defendant. | ) | |
| _____ | ) | |

BEFORE:   THE HONORABLE JAMES F. METCALF, MAGISTRATE JUDGE

TRANSCRIPT OF PROCEEDINGS

DETENTION HEARING


**APPEARANCES:**
For the Plaintiff:
    FEDERAL PUBLIC DEFENDER'S OFFICE
    By:  **Mr. Robert Bruce Stirling, Esq.**
    2285 South 4th Avenue, Suite 2E
    Yuma, Arizona  85364

For the Defendant:
    UNITED STATE ATTORNEY'S OFFICE
    By:  **Mr. John Ballos, Esq.**
    40 North Central Avenue, Suite 1800
    Phoenix, Arizona  85004-4408

Transcriptionist:
Cathy J. Taylor
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 31
Phoenix, Arizona 85003-2151
(602) 322-7249

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

UNITED STATES DISTRICT COURT

**P R O C E E D I N G S**

1
2         THE COURT:  Call the case of United States of
3  America vs. Roberto Lozano Partida, III.
4         All right.  Appearances please, counsel.
5         MR. BALLOS:  John Ballos on behalf of the government
6  appearing for Assistant United States Attorney Gayle Helart.
7         MR. STIRLING:  Good morning, Your Honor.  Robert Bruce
8  Stirling for Roberto Lozano Partida, III, who's present and in
9  custody.
10        THE COURT:  All right.  So we have two matters,
11 detention hearing as well as the status regarding preliminary
12 hearing.  Let's take up the preliminary hearing first.
13        Mr. Stirling, how would you like to proceed on that
14 issue?
15        MR. STIRLING:  Your Honor, we're willing to waive
16 the -- waive the preliminary hearing at this time.
17        THE COURT:  All right.  And, Mr. Partida, is that
18 correct, sir?  You want to waive that hearing in your case,
19 sir?
20        THE DEFENDANT:  Yes, sir.
21        THE COURT:  All right.  Then I'll accept the waiver.
22        All right.  So is the government still seeking
23 detention in this case?
24        MR. BALLOS:  The government is, Judge.
25        THE COURT:  All right.  Then how would you like to

1   proceed on that issue, government?
2           MR. BALLOS:  Judge, there is a pretrial services
3   report that was issued by Pretrial Services Officer Alex
4   Chavez.  He is recommending detention in this case.
5           Has the Court received a copy of the report?
6           THE COURT:  Of course.
7           MR. BALLOS:  And --
8           THE COURT:  Of course.
9           MR. BALLOS:  -- that report --
10          THE COURT:  So I would assume defense counsel has also
11  received that report as well?
12          MR. STIRLING:  I have, Your Honor.
13          THE COURT:  All right.
14          MR. BALLOS:  And then based -- I would assume that the
15  Court has read the report?
16          THE COURT:  Yes.
17          MR. BALLOS:  So is the Court's inclination to go with
18  the recommendation in the pretrial services report?
19          THE COURT:  At this point in time.  But, of course,
20  we're going to hear from Mr. Stirling as well, so -- but that's
21  my inclination at this point, but --
22          MR. BALLOS:  Then --
23          THE COURT:  -- you can present anything else you would
24  like to present, Mr. Ballos.
25          MR. BALLOS:  Judge, based on the Court's inclination,

1   the government is just going to submit on the pretrial services
2   report.  Should there be any need for any additional argument,
3   if the Court is swayed in a different direction, the government
4   will respond accordingly.
5           THE COURT:  All right.  Mr. Stirling?
6           MR. STIRLING:  Yes, Your Honor.
7           Your Honor, the pretrial services report basically has
8   an assessment of nonappearance and states that the -- they
9   believe he's a -- he poses a risk of nonappearance because of a
10  pending felony matter with the Yuma Justice Court.  And then
11  they also state that there's a concern about possible illegal
12  drug use and lack of suitable residence.
13          Your Honor, I talked first with the Yuma County
14  Attorney's Office this morning, and the charging attorney is
15  Mary White over there.  I'm not sure if the Court knows Mary
16  White.
17          THE COURT:  I do.
18          MR. STIRLING:  She's been there an awfully long time.
19          THE COURT:  I'm sure Mr. Ballos knows her very well as
20  well.
21          MR. STIRLING:  Anyway --
22          MR. BALLOS:  Yes, I do.
23          MR. STIRLING:  -- she --
24          MR. BALLOS:  She's cryptic.
25          MR. STIRLING:  She made the determination that they

1   were declining prosecution in favor of this federal matter.  So
2   there is no pending Yuma County matter at this time.  And
3   she -- they don't expect there to be one.
4          The other concern for the nonappearance was the lack
5   of a suitable residence.  Your Honor, in the report, the
6   pretrial services officer contacted the ex-wife of my client,
7   Valerie Arguello, and apparently contacted her out of -- out of
8   the blue and kind of caught her by surprise and asked whether
9   or not she was willing to become a third-party custodian.  She
10  did have a new boyfriend and -- and I talked to her this
11  morning, and she's indicated that she was caught off guard and
12  needed to talk to her boyfriend, so that's why the report
13  states what it states.  But she indicated she would -- she
14  discussed the matter with her boyfriend, and they're both
15  agreeable to allow him to stay with them, if need be.
16         The other matter --
17         THE COURT:  That would be an interesting situation,
18  but --
19         MR. STIRLING:  It could be.
20         THE COURT:  -- all right.
21         MR. STIRLING:  And, Judge, she's also the ex-wife who
22  is addressed in the documents that talk about priors.
23         In reviewing those, each page with my client, none of
24  those were actually priors except for the -- the DUI in 2013, I
25  believe, which became a reckless driving case, and all he was

1    asked to do was submit to six hours of classes.  There was no
2    fine, and he was not put on probation.
3           So all of the other matters that are listed, Judge,
4    were basically never filed according to my client.  And there
5    are no convictions.  And the only one, again, is the 2013
6    reckless.  The 2012 matters that are of most concern are
7    described here in the document as felonies.  The infliction of
8    corporal injury on a spouse and vandalism and destruction of
9    other property, my client stated both were dismissed.  The
10   document filed with the Court shows that Count 1, the
11   infliction of corporal injury, was dismissed, and the other one
12   they couldn't find was reported.  He said they were both
13   dismissed.
14          There was no injury at all to the spouse.  He
15   indicated that he cut -- he broke a mirror that was his and in
16   the process injured his own finger and cut his finger.  And
17   when he was talking with his wife, he touched her with his
18   bloody finger, and the police, when they responded, saw blood
19   on her face and assumed that that was an injury.  But there was
20   no injury of any kind.  There was no bleeding on her part.  The
21   case was dismissed, as was the other vandalism charge.  So
22   there -- he has no felonies whatsoever.  He just has the
23   reckless, Judge.
24          In talking with -- he has a civil attorney in
25   California, Your Honor.  And I talked with him also this

morning, a man named Scott Owens. And I believe he's in the Calabasas area. He indicated he got ahold of both of my client's sisters, who indicated they love him very much and are willing to do anything that they can to assist him in any way.

The -- the statement made about the documents on his door related to eviction, he still lives there, Your Honor. He's part of a program in California for part of the COVID relief that's entitled Housing is Key. It's a program of relief for people that are having problems due to the COVID to pay -- pay their rent. He is a self-employed computer programmer. He believes that all of his clients are still going to be there waiting for him when he returns.

And he stated that under that program you cannot be evicted from your home. So he still has his home as far as he's aware. And he left there on December 31st. And he said, you know, sometimes, you know, in talking with his sister also, she said she has friends who are in the same program, and the -- the landlords always update their paperwork every time hoping that one day that program's going to end and they'll be in a position to try and do something about the back rent at that point. But he does still have his own place, Judge. But if need be, his ex-girlfriend -- ex-wife is willing to allow him to live with her.

He's not a danger to the community. He has no felonies. He's got the one reckless driving charge, Judge.

1  And he did state -- you know, the part about him getting
2  concerned, when the interviewer started asking him about drug
3  use, he wasn't sure what that was all about, so he said, hey,
4  maybe I should talk to my lawyer first.
5          We did talk about it.  And I said, well, if you don't
6  want to answer it, don't answer it.
7          Since then he's -- he's told me that he's more than
8  willing to take any kind of series of drug tests that the Court
9  would wish to impose.
10          His ex-wife and his sister, who were both contacted by
11  the PSI writer, indicated that they were not aware of any drug
12  use on his part at all.  But he's more than willing to take any
13  kind of test.
14          THE COURT:  All right.  Thank you.
15          Officer Chavez, if this pending matter that was
16  referenced by Mr. Stirling was ultimately dismissed, would that
17  change your recommendation in this case?
18          PROBATION OFFICER:  No, Judge.
19          THE COURT:  All right.  Mr. Ballos, did you want to
20  have some response to what Mr. Stirling indicated in his
21  argument?
22          MR. BALLOS:  I'll be more than happy to respond,
23  Judge.  But if the Court's mind is already made up on not
24  releasing the defendant, I don't want to waste the Court's
25  time.

1    THE COURT:  Well, Officer Chavez, let's just go back
2  to you.  Even if that case was dismissed, as indicated by
3  Mr. Stirling, why would that not change your recommendation in
4  this case?
5    PROBATION OFFICER:  Judge, pretrial services has
6  concerns regarding the potential instability of the defendant's
7  residence, as listed on page 5 of the pretrial services report,
8  and that aggravates his risk of nonappearance.
9    THE COURT:  All right.  Well, Mr. Stirling, I have
10 the -- those concerns as well as some other concerns about
11 the -- your client.  My understanding is that there was some
12 issues even having him brought to Court properly this morning,
13 and that gives me some additional concerns as well.
14   So combined with his criminal history and the
15 recommendation done by pretrial services, I'm going to order
16 the defendant detained at this point in time.  But, obviously,
17 if you come up with some other matters that you want to move
18 for me to reconsider or reopen the case, I will certainly do
19 that, Mr. Stirling.
20   MR. STIRLING:  Thank you.
21   THE COURT:  All right.  Counsel, anything else?
22   MR. BALLOS:  No, Your Honor.
23   THE COURT:  All right.  Then that's all for today.
24     (Proceedings conclude at 11:38 a.m.)
25         ---oOo---

## **C E R T I F I C A T E**

    I, CATHY J. TAYLOR, court-approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

    DATED at Phoenix, Arizona, this 6th day of February, 2023.

<u>s/Cathy J. Taylor</u>
Cathy J. Taylor
